Thank you, Your Honor. May it please the Court. This case presents two primary questions. The first is whether or not this Court has the subject matter jurisdiction to consider the Petitioner's derivative citizenship claim in light of the irregular procedural way by which that claim arrived before this Court. The second question is whether there are any genuine issues of material fact as to whether Mr. Lainez is, in fact, entitled to derivative citizenship. Sotomayor Doesn't Poole v. Mukasey answer the jurisdiction question? Lainez We believe it does, Your Honor. I believe that case reaffirms the proposition that procedural irregularities in a nonfrivolous claim for nationality in the context of a removal proceeding will not bar this Court's subject matter jurisdiction. Sotomayor Because citizenship is not a casual thing. Lainez Certainly not. And beyond that, the line of cases from Ng Fung Ho and Agosto, as well from the Supreme Court, stand for the proposition that citizenship cannot be relinquished inadvertently or involuntarily, which would include by making a procedural error navigating the immigration laws, for instance, especially in this context of a person navigating those laws pro se in incarceration. Roberts Who was in the context of exhaustion. Can you point to any case anywhere where a similar exception was made for the 30-day limitation? Lainez Yes, Your Honor. So Duarte-Seri v. Holder was a case in which the Petitioner's find so to begin 1252, the statute, the timeliness bar, which the government invokes, calls for a Petitioner review to be filed 30 days after the final order of removal. So in Duarte-Seri v. Holder, for instance, the final order of removal was in 2001, I believe, and the claim came to this Court after the Petitioner filed a motion to reopen several years after the final order of removal. Then there was a petition to review that denial of the motion to reopen, and the Court, which ordinarily the Court does not have jurisdiction to review as it's a discretionary decision by the BIA, and yet the Court exercises jurisdiction over that claim anyway. So while the Petitioner in that case did file a timely petition to review 30 days after the BIA's denial, that denial itself was not a final order of removal, which is what the statute calls for. In the same circumstances present in Hammond v. Sessions, where the Petitioner motioned the BIA for a discretionary motion to reopen 13 years after the order was a final order of removal. So under the statute calls, again, and which what the government evokes, is a 30-day requirement to file the petition for review 30 days after the final order of removal. So we believe those cases stand for the proposition as well, that the time, that the 30-day requirement will not bar this Court's jurisdiction. Sotomayor, speak to the material fact. Are there any issues that we need to know before we could decide this case? We do not believe that there's any material. The government argues for remand and supplemental briefing. That's correct, but we don't believe that's necessary in this case. Tell me why. The principal issues of fact here, which are undisputed, the Petitioner immigrated here with his mother. They both were permanent residents. They both were – I'm sorry, pardon me. They were both, yeah, permanent residents. There's no dispute that the mother and the Petitioner's biological father never married, and there's no dispute that the mother was naturalized when the Petitioner was 14. Those are the principal issues of material fact. The issues, to the extent there is any dispute, and the government has not contested or not raised any concrete contesting of the Salvadoran law, to the extent there is any dispute here, it's with respect to Salvadoran law. And under Rule 44.1, conclusions of foreign law are to be treated as conclusions of law, and that the Supreme Court acknowledged in the animal science case, an appeals court has a de novo ability to review foreign law, essentially as a question of law. And what would El Salvadoran law tell us about whether he was legitimated? El Salvadoran law would, looking at the district, Northern District of California, that decision's of Salvadoran law would confirm that during the relevant period of time, the Petitioner was in the status of, was an illegitimate child under Salvadoran law. Even though someone's name was on his birth certificate? Yes. So under Article 279 of the Civil Code, the Family Code, in effect, in El Salvador in 1988, and I'll quote it, children, the translated version which is in the record, children born out of wedlock will be able to be recognized voluntarily by their father, or declared recognized by him, and will have the legal capacity of illegitimate children. So in the first place, the father's name appears on the birth certificate. Under Salvadoran law at the time, the recognition component of this would require him to have signed that certificate and entered it into the civil. In front of a judge, I read, or in front of a magistrate. We, under the civil registry, under the procedures. Now, we are not aware, there's nothing in the record to suggest that that, that those steps were followed under Salvadoran law. But in any event, under this reading of the Salvadoran Code, it's, it's, it's, it's not relevant because the law continued to legitimate, to discriminate between legitimate and illegitimate children. The, the ultimate, the, the basic conclusion under Salvadoran law and the Flores-Torres Court summary of it, and which is later summarized again in a helpful way by Anderson V. Holder in the Ninth Circuit, is that the only way to legitimate a child under Salvadoran law is to, is through marriage. And there is no, again, no material, no issue of dispute here that, that the petitioner's father and mother were never married. Thank you. Thank you. So, so to, to, to conclude again, the, the, the, the, on, with respect to the issues of, of... The rule that you were asking for here, that for a claim of derivative citizenship, there is the, the, the limitations of, of, of time simply don't apply. I don't believe that that's a... There may be certain circumstances under which a petitioner's, the way by which a claim arrives is so defective that, that it implicates, that it creates some sort of conflict, Your Honor. I, I, I do believe that, that the general, our position is that, that the, under the, under the Supreme Court precedent and under, under the general principles embodied in Poole v. Mukasey and others, the general principle is that an Article III court must at some point be able to have jurisdiction over a non-frivolous claim of nationality. So to the extent that there, in other words, we, we don't believe that this court has to decide that broadly of an issue here. In this case, the petitioner did timely appeal his, the district court's denial to bring it before this court in the first place. There may be a circumstance that I'm frankly having trouble thinking of where, where there's so much, there's, the dilatory conduct is so excessive as it to constitute a voluntary relinquishment. But, but that's, but that's not the case before this court. The petitioner. Well, are you, this is Judge Winter, are you arguing that, that the district court had no jurisdiction, but because Ryan has timely appealed from the dismissal of his complaint, there is preserved the subsequent issue, even though the district court lacked jurisdiction? Well, the district court lacked jurisdiction because of the, because of the statutory there's essentially, in the cases, there's essentially an avoidance doctrine, in effect, in which the court is trying, trying to reconcile the congressional intent of the statute with, with the, the constitutional mandate to be able to consider at some point, exercise jurisdiction. Oh, well, if I understand your position, the district court had no jurisdiction, but we should convert this to a petition for review of an immigration court's order. And we are able to consider it, even though the district court had no jurisdiction. And the government now has turned up and the government wants us to remand to the district court, which had no jurisdiction to make factual findings. Um, uh, it's, it sounds to me a little bit like the circumstances judge Parker mentioned that no matter what happens, someone can, at any point using any procedural means, raise a claim of citizenship. If that's the law, that's the law, but it does seem very odd to me. Uh, we, we, we seem able to confer jurisdiction on the district court for factual findings, uh, but the district court has, uh, in, in a petition for review, uh, while holding that, that the petition for review is timely and, and protect and preserves the issue, even though it's an appeal from the district court. I mean, all of us seems kind of Wallace. Um, well, your, your honor, a few things, and I do apologize because I couldn't make everything, everything out, but, but I, I, for one thing, I believe that the government is arguing that the court does not have subject matter jurisdiction here because this was not a timely filed petition for review on the, the general principle would be that, that if, as if a United States citizen is in removal proceedings at some point, um, there should be, there, there needs to be some procedural mechanism for that, for that, for that citizen to have their claim heard before an article three, article three court. Um, in this particular instance that, that, that we, there's precedent, especially under Langford v. Ashcroft for the, for the district court to be able to, pardon, for, for this court to essentially be able to cure the jurisdictional defect, um, of the, of the district court, um, by treating it as a transferred petition for review. And that's, that's what we're asking for in this particular case. What? This is only in the case of non-frivolous claims to citizenship, isn't that correct? That's correct. So this would only apply in, in the event that the court determines that the claim is non-frivolous, correct? Um, so there is, there is some sort of, there is a screening at, at the front end of whether or not the, the claim of nationality is, is non-frivolous in the first place. We do note here that the government has not, not claimed that Mr. Lanez's citizenship claim is non-frivolous. At most, in requesting for a remand, it's in fact acknowledging that it is a non-frivolous claim of citizenship. So in the context of a, assuming arguendo that a, that a, that a petitioner is a citizen, um, that is placed in a removal proceeding, uh, we, we, we would posit that for the, at least the, the, the requirements of the, of the immigration laws, um, the procedural requirements would not bar a court from exercising jurisdiction over that claim at any point. So again, the, the, the Hammond v. Sessions case was 13 years later after the, after the final order of removal. The sole, um, procedural distinction is that there was a, a motion to reo, to reopen interposed after those 13 years. So, um, as far as disregarding any, uh, time bar, um, what, what the government's position would seem to suggest is that so long as you then lodge a, a, a motion to review, which you can do at any time, essentially, a motion to reconsider, um, at any point, you, you reactivate your claim and then you can appeal 30 days. Uh, you can bring the petition to review 30 days after that decision is presumably denied, um, which would be effectively the same point, except it interposes a extra statutory procedural step that, that, that isn't, uh, called for by the statute and that we don't believe has any actual principle basis for. Um, and that, and that's the essential distinction. Would that be available to the petitioner here? Um, that option would be available, but we don't believe it's, it's necessary. And for one, for one, for one thing, that's, it would still be inconsistent with the, with the plain terms of the statute, which calls again for the petition for review to be filed 30 days after the final order of removal. Um, for another thing, the, the general idea, uh, or the, or the principle in the Ng Fung Ho case is that, um, and, and embodied by Poole v. Mukasey, which cited a sister court to say, um, until the claim of citizenship is revoked, is resolved, the propriety of the entire proceeding is in doubt. So to require, again, assuming our aguendo that a petitioner is a U.S. citizen, that petitioner has no place in the BIA in the first place. Um, so, so for that reason, we don't believe it's necessary. I would also add that we're up, that Mr. Lainez's has a final order of removal right now. We, it's a subject due to this court's forbearance policy, the, the, the, he's subject to a stay, but if this court were say to dismiss the case and request that he go to the BIA, that would create the possibility of his removal. Um, so, so for that reason, we, we believe there that not only is it not required, but that it creates a, a, a very real harm. Thank you. You have reserved three minutes for rebuttal. We'll hear from the government. Morning. Good morning and may it please the court. Christopher Connelly on behalf of the government. There's a proper procedural path for Mr. Lanez to have his derivative citizenship claim heard in this court. Mr. Lanez referred to it in his reply brief, and we've discussed it briefly here. He can move to reopen his removal proceedings in the immigration court. At that point, he can either have those proceedings heard administratively in the normal course. If that motion to reopen is denied, he can appeal that to the BIA. If the BIA affirms the denial of the motion to reopen, he can file a petition for review. And he's in much the same situation as the petitioner was in this court's Hammond case. There are good reasons for requiring someone in Mr. Lanez's position to follow that procedure. First of all, the, the immigration courts should have the first crack at determining whether or not Mr. Lanez is a citizen. That's particularly noteworthy here, whereas we note in our, in the government's brief, there's been an intervening BIA precedent decision, matter of cross, that arguably bears on the question of, of whether or not Mr. Lanez derived citizenship. And matter of cross was just decided in 2015, long after the immigration court heard his, his removal proceedings. More broadly, and this speaks to some of the concerns Judge Winter raised, it, it channels, continues to channel these types of claims through the claim channeling process that Congress established in the Real ID Act. There's an important distinction between the provisions that the government is arguing about here, 1252A5 and B1, and the administrative exhaustion requirement  which is this, A5 and B1 talk about how you properly get before this court. D1, the administrative exhaustion requirement, talks about what you can argue once you're here. If D1 applied to Mr. Poole and to others like him, like Mr. Lanez, then he'd be out of luck. Then he would not be able to get judicial review of his citizenship claim. But if A5 and B1 apply, he can still get here. He can still argue his citizenship claim properly. He just has to go back to the immigration court and, and go through that process. Again, the Hammond case is illustrative here because what happened there is the, the petitioner was ordered removed by an immigration judge and appealed that to the board. Are you, are you going to deport him if he goes back to reopen his immigration case? Pardon me, Judge Winter. I'm sorry. I didn't hear you. Are you going to deport him while he goes back to, to seek reopening of his immigration case? Oh, are we going, is it, I, as I stand here, I, I can tell you this, Judge Winter. I mean, he, Mr. Lanez filed a habeas petition in the Western District of New York. And while that petition was pending, ICE released Mr. Lanez from custody and those habeas proceedings were, were terminated. I mean, obviously we're dealing with a question of citizenship here and you'd have an individual who's, who's seeking to reopen. My understanding is that in tandem, in tandem with seeking the Suspante reopening with the immigration court, Mr. Lanez would also ask the immigration court for, for a stay of his removal while that's being considered. He would ask us for a stay. Excuse me, Your Honor? He would ask us for a stay. Well, if, what, what our position is, is that currently in this posture, this court lacks jurisdiction to hear this matter. If it were to be dismissed and Mr. Lanez was, was to go back to the immigration court to seek to reopen his proceedings, he could ask the immigration court for a stay of removal. So that's what Judge Winter just asked. Could he be removed in the interim? I, I suppose at this point, as a, as a technical matter, he could be. I mean, he has an order of removal that's currently final. And, and I mean, the government would argue that even as we stand here today, that's true because there's not a proper petition for review that's pending before this court. But again, he's been released from custody. His habeas, his habeas proceedings were terminated. He would be moving the immigration court and seeking a stay of his removal, presumably in tandem with that motion to reopen. So. Let's go to the other path. You've asked if we find we have jurisdiction based on Poole versus Mukasey. You ask then for the opportunity for supplemental briefing. Correct. What, what, what is it that you want to brief? Well, there's again, there's, there's, there's been some intervening developments in the law with respect to the question of Mr. Lanez's citizenship. And just to back up briefly under the former INA 321A, one of the things that Mr. Lanez would have to show is that his paternity was not established by legitimation. So when he was before the immigration court, the, the relevant BIA precedent was a case called matter of Moraga and Moraga was dealing specifically with paternity by legitimation under Salvadoran law. And what it determined was that there were amendments to the El Salvador constitution in 1983 that abolished the distinction between children born in and out of wedlock. And so that as of the effective date of those amendments, which was in December 1983, that distinction was, was abolished. And under that interpretation of the constitution, Mr. Lanez would, would have been legitimated and therefore not eligible to derive citizenship. Just by the name on his birth certificate? Correct, Your Honor. Because there was, there was a recognition. There was a, there was a paternal recognition that, that this was his child and that was going to be, that was going to be sufficient. Doesn't the constitution provide otherwise? Pardon me? Doesn't the Salvadoran constitution provide otherwise? That's what, no, that's, that is what the Salvadoran constitution did. But the question then becomes, and it's, it's, it, it is in some ways a legal question, but also a factual question, which is what was happening in El Salvador during the relevant time period, which was 1983 to about 1994. Because what happened was, notwithstanding the constitutional amendments that abolished that distinction between children born in and out of wedlock, there were provisions in the Salvadoran legal code that continued to talk about legitimation and legitimate and illegitimate children. So the question is, if those statutes continue to be on the books until 1994, did the constitution actually abolish that distinction or not? And there's a BIA decision, another precedent decision, matter of cross in 2015, that says that when you continue to have those, this, it's not dealing with El Salvador, it's dealing with Jamaica. And so it's different, it's looking at different facts, but, but as a matter of principle, what it said in terms of paternity, paternity legitimation under 321A was when you have a country that continues to have those legal distinctions, notwithstanding, you know, purported elimination of them, that you would still, you don't have to, sorry, you do have to apply with, comply with those additional requirements in order to be legitimated. So under that interpretation, if that interpretation applies to what was going on in El Salvador, then, then Mr. Lenas would not have been legitimated and then he would be eligible for derivative citizenship. It's a complicated question. It's not as simple as just reading the, the, the, the plain black and white language of the constitution and some. You, you want to be able to brief? It's, yes. And I think not only brief, but I think that, I think that the court, both the district court in making its determination and this court, if it were to come back, um, would, would benefit from, from frankly, uh, some, some expert, some expert testimony on that. Some people who really understand not only how Salvadoran law works. Um, but, but how, if at all, these, these legitimation issues were, were actually being decided in El Salvador at the time as applied to whatever the relevant facts would be in Mr. Lenas' case. So yes, again, the government argues there is no jurisdiction here. There is a path for Mr. Lenas to get back here without question. He can reopen his government proceedings. Will the government agree not to detain him and not to deport him if he undertakes that path promptly? Judge Winter, I can't answer that as I stand here, obviously I would need to consult with some, some relevant agencies. If, if, would you, would you please consult and inform us by letter whether the government will consent? Absolutely. Your honor. Is there, is there a deadline? I mean, we'll, we'll do it as promptly as we can. Keeping in mind that it is a very serious matter. Absolutely. Your honor, Judge Pooler, if, if I could respectfully request perhaps two weeks, because there's going to be more than one agency that we're probably going to have to talk to. And, um, I just want to make sure we do that. You can have two weeks. Thank you, your honor. Of course, Mr. Lenas can respond to any letter filed by the government. If the panel has no further questions, uh, we will, we will promptly get that letter in and, and, uh, thank you. Thank you. Counsel. Uh, thank you. I would just like to respond to, to, to a handful of points. I think the first and foremost is, is that the, that the government's position on the, on the lack of stay or on the Mr. Lenas's vulnerability to deportation while these proceedings are, are pending affirms our point that as, as, as, as a legal matter, there is that it is, there is, um, requiring him to go back to the BIA does, does, does not, does nothing to assure the, the, the court of the constitutional, um, uh, harm that would occur if a potential citizen was, was deported. Um, so, and also confirming that if the, if he went to the BIA and asked for a stay, that, that is completely discretionary. So there's no, no, no guarantee that. Oh, we're, we're asking them to say whether they will assure us in advance how they will exercise their jurisdiction. Uh, yes, your honor. Uh, and, and I, I guess my only, my only, my only purpose there is to clarify that, that in this case, that's an ad hoc, uh, um, request by this court, but, uh, as a general legal matter. Well, I, I don't think that there's a certain ad hoc nature to the procedure we're in now, unless my suggestion was simply to try and make it, try and transform this back into a procedure in which some rules apply. That's correct. You're point taking you're out of ad hoc, kind of ad hoc to transform, uh, an appeal from a court that had no jurisdiction on the jurisdiction point. And, and, and say, we have jurisdiction as a petition for review. Talk about ad hoc. Um, point taken your honor. I would only add that I would only then respond to, to note again, that even in, in, in that case and under the existing, uh, precedents of Duarte Seri and, uh, Gordon V. Sessions and, and, um, it's a summary order, but, but Hammond V. Sessions as well. In all those cases that, that, that interposed motion to reopen, um, is still not, again, it's not 30 days after the final order of removal. And so the government says that he should start all over again, um, and ultimately file a petition for review in this court. Can't we construe this filing as a petition for review? Do we have the power to do that? Are you referring to this current, this current? I believe, I believe it's clear that the court does have that power under, under INS v. Paul, under Langford v. Ashcroft. And we've done that in the past. That's correct. That's correct. That, that, the, in specific, the court in Ashcroft or Langford v. Ashcroft, uh, specifically noted that it was construing the, the, the, the complaint, the habeas complaint improperly filed in the district court was going to construe it as a petition for review in order to cure the jurisdictional defect brought by the initial complaint. And that's precisely what we're asking for in this case. And I guess the flip side of that question is the petitioner could start over again as the government suggests. And you just think that's a waste of time. Is that your reason for it? It's certainly not efficient from a, from a, from a judicial resources perspective to interpose a, this, this requirement, but we also believe that there's a, that, that under, under the, under the, um, the, the doctrine announced by this or the principle announced by the Supreme Court in Ling-Fung Ho v. White, the, the, the denial, the, the claim of citizenship is a, is a denial of an essential jurisdictional fact for the executive branch to place that, the, the petitioner in deportation removal proceedings in the first place. So in some sense, there is a, is a, uh, there is an impropriety there in the first place. But, uh, but of course that it is, it is an option, uh, from procedurally. Uh, I just want to respond, uh, if I may, with, with my last few seconds here, uh, on the, on the issue of Salvadoran law that was raised in the intervening, the, the, the matter of in re cross, in re cross stands for nothing more than the proposition that if a, if a government abolishes all distinction between legitimate and illegitimate children, uh, it, it amounts to a automatic legitimation of, of, of any given petitioner. Um, but again, the, the, the, the California courts, uh, very carefully, uh, briefed on, if you, if you look at the docket through, through a full paddle of the conclusion that in fact, despite the, the, um, the F, the, um, aspirational language of the constitution to announce that it would abolish all, uh, distinctions between legitimate and illegitimate children, it left it up to the legislature to in fact, do that with the legislature did not do for, for the intervening 10 years and which are, which is the key point of time. And I'd like to also note that this court, uh, just this year or in, in USV Lewis, uh, undertook a interpretation of a legitimation statute under, I believe under Guyanese law in, or Jamaican law, uh, in USV Lewis and held, uh, that a general legitimation statute does not establish paternity by legitimation under a former section of 30, 30, 309A of the 1952 INA if that jurisdiction also retains a formal legal legitimation process, which the, uh, Flores-Torres court found that, that, uh, Salvador did in fact maintain. And it's your position that we could decide this by ourselves? That's correct, Your Honor. It's essentially de novo review of the law. Thank you. Thank you. Thank you. Uh, appointed counsel. Thank you for good job. Well done. Um, we'll turn.